FRAZER, *et al. vs.* PALMER.—June, 1828.

Tenants, holding land adversely to petitioners claiming a sale of it as the devisees of one who had formerly been seized, cannot be ejected by the court of chancery, for refusing to obey an order of that court, enjoining such tenants to deliver up possession to a purchaser under a decree for a sale, to which they were not parties.

APPEAL from the Court of Chancery. A petition was filed in this case on the 10th of June 1825, by *John Palmer*, (now appellee,) *George L. Frazer* and *Charles D. Robinson*, for the sale of part of a tract of land called *Foxe's Hole*, being part of the real estate of *George Lanham*, deceased. The petition stated, that *Lanham*, by his will dated the 3d of January 1793, directed that his executors should rent the said land until the said *Charles D. Robinson* should attain the age of 21 years, then the said land should be sold by his executors, and that the proceeds should be divided between the said *Robinson* and the said *George L. Frazer*. That *Robinson*, having attained the age of 21 years, he and the said *Frazer* conveyed their interests in the said land to the said *Palmer*, viz. the former on the 7th of August 1821, and the latter on the 16th of February 1822. That the executors named in the said will, never executed the same so far as it related to the sale of the said land, and that they were dead. *Prayer*, that a trustee be appointed to make sale of the said land, and for further relief, &c. On this petition the chancellor, on the 10th of June 1825, passed an order for the sale of the said land, and appointed *George H. Lanham* the trustee to sell the same, who on the 12th of November 1825, reported that he had sold the land to

the said *Palmer*, by whom the terms of sale were complied with. On the 14th of November 1825, *Palmer*, (the purchaser and appellee,) petitioned the chancellor to confirm the said sale, without publication, upon the ground that he alone was interested therein; and stating that *Mary* and *John L. Frazer*, (the now appellants,) were in possession of the land, refusing to give the same up to the petitioner, and praying that an order might pass requiring them to do so, or show cause to the contrary. The chancellor accordingly passed an order ratifying the sale, and requiring *M.* and *J. L. Frazer* to deliver the possession to *Palmer*, or show good cause to the contrary on the 8th of December then next, provided a copy of the order and petition be served on them on or before the 23d of November. A copy was served in time; and on the 7th of December 1825, *M.* and *J. L. Frazer* showed cause by their petition, setting forth, that after the death of *George Lanham*, the testator, his executors, *John Frazer* and *Elie Lanham*, sold the tract of land called *Foxe's Hole*, under the will, and that *John Frazer*, one of the executors, became the purchaser at an adequate price. That after *Charles D. Robinson* and *George L. Frazer*, the devisees, attained the age of 21 years, *Robinson* and *John Frazer*, the purchaser, agreed to refer it to arbitrators to say how much he, *Robinson*, should receive for his interest in said land; and that *George L. Frazer*, the other devisee, agreed to take the same for his. The arbitrators on the 19th of October 1805, awarded, that *John Frazer*, the purchaser, should pay to *Robinson* for his moiety, the sum of £113 12 1, which sum had been paid to him, as had also the same sum been paid to *George L. Frazer*, as appeared by copies of their receipts and the award filed in the orphans court. That *John Frazer*, the purchaser, by his will dated the 29th of November 1820, devised the said land to the petitioner, *Mary*, for life, and to the petitioner, *John L*, in fee after her death. That the testator was in possession of the land at the time of his death, which occurred in December 1820, and had been in possession from the year 1805, and before, and that the petitioners had since continued in possession. That they were not parties to the proceeding under which the land was sold; that *Palmer* knew of their claim; and that before filing his petition

for a sale, he brought an action of ejectment against the petitioners, which he *nonpross'd.* The Chancellor, [*Bland,*] on the 12th of December 1825, decided the cause shown to be insufficient, and ordered an injunction to issue, commanding the petitioners to deliver possession of the land to *Palmer.* From this order the petitioners appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, MARTIN, ARCHER, and DORSEY, J.

*J. Johnson,* for the Appellants, contended, that the order of the chancellor was erroneous—1. Because the appellants were not parties to the proceedings under which the sale of the land to the appellee was made. 2. Because the appellants were in possession of the premises at the time the petition of the appellee was filed for a sale, claiming title to the same, under the will of a party who died seized.

A trustee may purchase of *cestui que trust,* if no fraud or advantage is taken, &c. *Coles v Trecothick,* 9 *Ves.* 246. *Morse v Royal,* 12 *Ves.* 373. The appellants having been in possession of the land for more than 20 years before the petition for a sale of it was filed, they ought to have been made parties. *Tongue v Morton,* 6 *Harr. & Johns.* 21. *Dunne v Farrell,* 1 *Ball & Beatty,* 124.

*Magruder,* for the Appellee. The application by the appellee for a sale of the land in question was made under the act of 1785, *ch.* 72, *s.* 4, which does not require that any person should be brought before the court to show cause, &c. If the appellants could have been made defendants, then the original decree would have concluded them, and they could have denied the title of the purchaser, when they came in, in consequence of his petition. Not being defendants originally, they had a right, in showing cause why the possession should not be delivered to the purchaser, to show a title in themselves or in persons under whom they claimed, as was done in *Tongue v Morton.* *Tongue* produced a patent, and claimed the land on the ground it had escheated to the state, and the decree did not authorise the sale of it. Here it was not shown that the sale to *John Frazer* was legally made. The executors did not account for the rents. There is no evidence of any sale to *John*

*Frazer*, one of the executors—when made, or what sum of money was paid. As an evidence of payment, certain papers were exhibited. It may be that the sums of money paid were in discharge of the proportions of the legatees for rents, and their share of the personal estate, and not for the proceeds arising from the sale of the land, as nothing was said about land, but stated to be a *legacy*. No legal cause was shown why the appellants should not be dispossessed of the land. They had no right or title to the land, and it was not necessary to make them parties. This case, therefore, is not similar to that of *Tongue v Morton*, where an adverse title was shown. Here none has been shown.

EARLE, J. delivered the opinion of the court. The argument of the appellants' counsel assumed in this case, as true, the facts set forth in their petition to the chancellor, and if they are so to be considered, as for this occasion it seems to us they must be, they make a case entirely within the principles of a former adjudication of this court.

*George Lanham* devised the whole of the balance of his estate, real and personal, after a bequest of some small legacies, to *Charles D. Robinson* and *George L. Frazer*, with a power to his executors to sell his land, after *Charles D. Robinson* arrived at age, and to divide the proceeds between him and *George L. Frazer*. *Charles D. Robinson* arrived at age some time before the 19th of October 1805, for at that time he bargained with *John Frazer*, one of the executors of *George Lanham*, for the sale of his legacy in the real and personal estate, thus devised to him by *George Lanham's* will. Soon after, *George L. Frazer* also sold his legacy under the same will, to *John Frazer*. From the time of the purchase of those rights, until his death, in 1820, *John Frazer* remained in the uninterrupted possession of *George Lanham's* real estate, using and considering it as his own; and just before his decease, he made his will, and devised it to the appellants. In 1821, soon after *John Frazer's* death, *John Palmer*, the appellee, obtained separate conveyances from *Charles D. Robinson* and *George L. Frazer*, for all their right and title in and to the real estate, which was devised by *George Lanham* to them. After this he instituted an action

of ejectment for this estate, against the appellant, *Mary Frazer*, who holding adversely, resisted the suit, until it was discontinued by the plaintiff. *John Palmer* then united with *Charles D. Robinson* and *George L. Frazer* in a petition to the chancellor for the appointment of a trustee to sell the real estate of *George Lanham*, pursuant to his will. The decree passed, and the trustee appointed sold the estate to *John Palmer*, who obtained the chancellor's order on the appellants, to deliver the possession to him. This is the order appealed from.

With these facts before us, we must entertain the opinion, that the chancellor, in issuing his order, overlooked the authority of *Tongue v Morton.* The appellants were not parties to the decree for the sale of *George Lanham's* real estate, of which they had been possessed for many years before, holding it under *Charles D. Robinson* and *George L. Frazer*, and adversely to their grant to *John Palmer*, as was well known to him. And, to use the language of the above mentioned authority, "the appellants could not be removed from such a possession, until their title was adjudged to be defective in the regular and established course of judicial proceeding. Such an interest could not, consistently with the principles of our jurisprudence, be the subject of inquiry, and decided on, in a summary manner, by way of motion." The undeniable general power of the chancellor to enforce his decrees, which operate upon real estates, by ordering the possession of them to be delivered to the purchaser, appears then to us to have been improvidently exercised by him in this instance, and his order is, therefore, reversed.

ORDER REVERSED.